**UNITED STATES of America,
Appellee,**

v.

**A. Alfred TAUBMAN, Defendant–
Appellant.**

**Docket No. 02–1253.**

United States Court of Appeals,
Second Circuit.

Argued: July 15, 2002.

Decided: July 25, 2002.

Robert B. Fiske, Jr., Scott W. Muller, James P. Rouhandeh (Jacob W. Buchdahl, Neal A. Potischman, of counsel), Davis Polk & Wardwell, New York, NY; Seth P. Waxman, Paul A. Englemayer, Edward C. DuMont, Wilmer, Cutler & Pickering, Washington, DC, for Defendant–Appellant.

John P. Fonte, John J. Powers, III, Robert B. Nicholson, Steven J. Mintz (Charles A. James, Assistant Attorney General, James M. Griffin, Deputy Assistant Attorney General, on the brief), United States Department of Justice, Antitrust Division, Washington, DC; Ralph T. Giordano, Philip F. Cody, John J. Greene, Patricia L. Jannaco, Debra C. Brookes, Kevin B. Hart, United States Department of Justice, Antitrust Division, New York, NY, for Appellee.

Before: CABRANES and STRAUB, Circuit Judges, and GLEESON, District Judge.*

PER CURIAM.

A. Alfred Taubman appeals from the denial of his motion for a new trial and from a judgment of conviction entered by United States District Court for the Southern District of New York (George B. Daniels, *Judge*) following a jury trial. Taubman was convicted of conspiracy to fix prices in violation of the Sherman Act, 15 U.S.C. § 1, while he was chairman of the board of Sotheby's Holdings, Inc. Taubman has also moved for release pending appeal.

On appeal, Taubman argues that the District Court, through certain evidentiary and other rulings, "critically impaired" his ability to present his defense, Appellant's Br. at 1, which was that his numerous meetings with Anthony J. Tennant, the chairman of Sotheby's chief competitor, Christie's International plc, were about matters other than price fixing and that the chief executives of the two companies—Diana D. Brooks of Sotheby's and Christopher Davidge of Christie's, the Government's principal witnesses at trial—were primarily responsible for the price fixing between the two companies, of which Taubman had no knowledge. Specifically, Taubman contends that the District Court erred:

- in denying his request for letters rogatory seeking the testimony of Lord Peter Carrington, Tennant's predecessor at Christie's, regarding a history

---

* The Honorable John Gleeson, United States District Judge for the Eastern District of New York, sitting by designation.

of legitimate communications between the chairmen of the two firms;

- in excluding as hearsay testimony by Taubman's administrative assistant repeating statements Taubman purportedly made following a meeting that allegedly related to the charged conspiracy;

- in excluding notes in Tennant's handwriting which, Taubman argued, showed that Tennant was conspiring in April 1995—months after Taubman's alleged initiation of the conspiracy—with Lord Thomas Camoys, former Lord Chamberlain to the Queen of England and a senior official of Sotheby's, and not with Taubman;

- in refusing Taubman's request that the jury be explicitly charged that meetings between competitors for the purpose of exchanging information on independently derived prices or for the purpose of discussing other matters of common concern are not unlawful; and

- in permitting the prosecutor to include in his summation the following quotation, attributed to the eighteenth century economist Adam Smith: "People in the same *trade* seldom meet together even for merriment or diversion, but the conversation ends in a conspiracy against the public and in some contrivance to raise prices." *

The Government's evidence at trial is described in *United States v. Taubman*, No. 01 Cr. 429, 2002 WL 548733 (S.D.N.Y. Apr.11, 2002), familiarity with which is presumed. We understood Taubman's counsel to concede at oral argument that, viewed in the light most favorable to the Government, *see Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d

560 (1979), this evidence was sufficient to support Taubman's conviction for the charged crime. Taubman argues, however, that the District Court's errors deprived him of a fair trial.

■ We turn first to the District Court's evidentiary rulings, which we review for abuse of discretion. *See, e.g., United States v. Szur*, 289 F.3d 200, 216 (2d Cir.2002). In doing so, we bear in mind that "a judge has not abused [his] discretion simply because [he] has made a different decision than we would have made in the first instance." *United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001).

■ With respect to the letters rogatory, the District Court held that Taubman failed to demonstrate the materiality of Carrington's testimony at trial. Carrington had previously testified in a December 2000 deposition in a related civil action—a deposition taken by one of Taubman's attorneys—that he had met Taubman once, and then only to "shake [Taubman's] hand," and otherwise had never spoken with Taubman.

■ With respect to Taubman's statement to his administrative assistant, the District Court excluded it as hearsay. The District Court held that Taubman did not establish that the testimony was admissible pursuant to Fed.R.Evid. 803(3) to show Taubman's state of mind when he went to the relevant meeting, because it was not made contemporaneously with that meeting. *See* Trial Tr. at 290–92 (the District Court states that it "does not make sense" that Taubman's statement to the administrative assistant upon returning from a meeting with Tennant that he was unsure

---

* Adam Smith, An Inquiry Into the Nature and Causes of the Wealth of Nations 55 (Great Books ed.1952) (1776).

why Tennant had wanted to meet reflects Taubman's state of mind because at the meeting "they obviously discussed something"). Rather, it was a statement about a meeting that had already happened. *See United States v. Cardascia,* 951 F.2d 474, 488 (2d Cir.1991) ("[A] determination of whether a statement falls within the state of mind exception requires a predicate finding as to whether the statement relates to a then existing state of mind or to a past memory or belief offered to prove the fact remembered or believed.").

█ With respect to the notes of the alleged April 1995 meeting between Tennant and Camoys, the District Court also excluded them as hearsay. The District Court held that (1) the notes were not admissible under Fed.R.Evid. 803(6) as business records because Tennant was under no obligation to make them and because Taubman had not established that the document was created under circumstances indicative of trustworthiness; (2) the notes were not a statement against interest within the meaning of Fed.R.Evid. 804(b)(3); (3) Taubman had not met his burden of establishing the notes' "circumstantial guarantees of trustworthiness" as a predicate to their admissibility pursuant to Fed.R.Evid. 807; and (4) that the notes were inadmissible pursuant to Fed.R.Evid. 403 because their probative value was outweighed by the danger of unfair prejudice and confusion of the issues.

We have carefully examined each of these rulings and all of Taubman's arguments regarding them and hold that the District Court did not abuse its discretion. *Cf. Szur,* 289 F.3d at 216 (stating that a defendant's right to present a defense through particular evidence of his choosing "must be balanced against a court's leave to set reasonable limits on the admission of evidence)." (quoting *United States v. Blum,* 62 F.3d 63, 67 (2d Cir.1995)). With

respect to the notes, we observe that district courts have "broad latitude" in excluding evidence pursuant to Fed.R.Evid. 403, "even where the exclusion of evidence affects the defense case." *Id.*

In any event, any error in the District Court's evidentiary rulings was, in the particular circumstances presented, harmless. Taubman's knowledge of and participation in the conspiracy to fix prices was not established by circumstantial evidence, it was established by direct evidence—the testimony of Brooks and Davidge that Taubman and Tennant had met with one another on several occasions and agreed to, *inter alia,* fix prices. Brooks explicitly testified that she was directed by Taubman to meet with Davidge and work out the specifics of the price-fixing agreement. *See Taubman,* 2002 WL 548733, at *5-*6 (S.D.N.Y. Apr.11, 2002) (detailing Brooks's testimony). Brooks's testimony was corroborated not only by the testimony of Davidge, but also by documentary evidence, including Tennant's handwritten summary of his April 30, 1993 meeting with Taubman. Indeed, as the District Court noted, if the jury found Brooks and Davidge credible, the evidence of Taubman's guilt was "overwhelming." *Id.* at *15.

The excluded notes, for example, do not directly bear upon the credibility of either Brooks or Davidge. Indeed, at best, the notes merely support an argument that Tennant met another Sotheby's executive, Lord Camoys, in furtherance of the conspiracy during the critical period in early 1995. They do not contradict any testimony of Brooks or Davidge, nor do they affirmatively demonstrate Taubman's purported lack of knowledge of or participation in the conspiracy. Similarly, neither the putative testimony of Carrington nor the excluded testimony of the adminis-

trative assistant undermine any of the direct evidence against Taubman.

■ Any error in the refusal to give the requested charge was also harmless. The Government's case did not depend upon (and, indeed, the Court's charge, read as a whole, did not permit, *see United States v. Vasquez,* 82 F.3d 574, 577–78 (2d Cir. 1996)) the jury's inferring Taubman's knowledge of or participation in the conspiracy from the mere fact of his numerous meetings with Tennant. Rather, the Government established Taubman's knowledge of and participation in the conspiracy—the only element Taubman contested at trial—by the direct evidence described above.

■ The Adam Smith quotation is more problematic. We agree with Taubman that the statement that competitors "seldom meet together ... but the conversation ends in a conspiracy against the public ... to raise prices" suggests that knowledge of and participation in an antitrust conspiracy can be inferred merely from the fact of meetings between persons engaged in competing businesses, which is not the law. *See Kreuzer v. American Acad. of Periodontology,* 735 F.2d 1479, 1488–89 (D.C.Cir.1984). Moreover, the impermissible suggestion is strengthened by its attribution to the Enlightenment thinker Adam Smith, "the father of modern economics." *See* Paul A. Samuelson & William D. Nordhaus, Economics 376 (14th ed.1992).

If, as the Government told the District Court, it "frequently use[s]" the quotation in antitrust cases, Trial Tr. at 1931, then it should reevaluate the practice, and district courts should carefully consider the tendency of any such quotation to taint the jury's understanding of the law. Indeed, were this a case where the Government asked the jury to infer the existence of or a defendant's participation in a price-fixing

conspiracy, we might well have vacated the conviction and remanded for a new trial. We now consider the Government to be on notice that future uses of a quotation such as the one used in this case might well prove fatal to its case.

In the instant case, however, the Government relied on the overwhelming direct evidence of Taubman's knowledge of and participation in the conspiracy, as noted above. Accordingly, we conclude that, in the particular circumstances of this case, the inclusion of the Adam Smith quotation in the Government's summation was harmless.

### Conclusion

In sum, we hold that

(1) the District Court did not abuse its discretion in its evidentiary rulings and that, alternatively, any error was harmless;

(2) any error in the jury instructions was harmless; and

(3) the Adam Smith quotation impermissibly suggests that knowledge of and participation in a price-fixing conspiracy can be inferred from the mere fact of meetings between persons who are engaged in competing businesses. In the particular circumstances of this case, however, the District Court's failure to sustain Taubman's objection to the quotation was also harmless.

Accordingly, we affirm the judgment of the District Court.

In considering Taubman's motion for release pending appeal, we are mindful that the appellate process in this case has not yet run its predictable course. Nevertheless, in light of our decision, we deny the motion for release pending appeal. *See* 18 U.S.C. 3143(b)(1)(B)(i) (providing that "[t]he judicial officer shall order that a

person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds ... that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in ... an order for a new trial"); Fed. R.App. P. 9(b) (providing that when review the decision of a district court regarding release on appeal, we must apply the criteria of, *inter alia*, § 3143).