UNITED STATES of America,
Appellee,

v.

DINERO EXPRESS, INC.; Luis Francisco Soriano, also known as "Luis Francisco Soriano," also known as Francisco Luis Soriano; Maria Y. Mendoza, Defendants,

Roberto Beras, also known as "Robert Silvestre," Defendant–Appellant.

Docket No. 01–1634.

United States Court of Appeals,
Second Circuit.

Dec. 20, 2002.

Andrew J. Ceresney, Assistant United States Attorney, Southern District of New York, New York, NY, (James B. Comey, United States Attorney, on the brief; Robin L. Baker, Assistant United States Attorney, of counsel), for Appellee.

David S. Zapp, New York, NY, (Marjorie M. Smith, of counsel), for Defendant–Appellant.

Present PARKER, STRAUB and RAGGI, Circuit Judges.

## SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby **AFFIRMED.**

Defendant–Appellant Roberto Beras appeals from a January 28, 2001 judgment of the United States District Court for the Southern District of New York (Shirley Wohl Kram, *Judge* ) convicting him, following a jury trial, of one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); one count of conspiracy to evade currency reporting requirements, in violation of 18 U.S.C. § 371; thirty-three counts of international money laundering, in violation of 18 U.S.C. §§ 2 and 1956(a)(2)(B); seven counts of money laundering, in violation of 18 U.S.C. §§ 2 and 1956(a)(3); thirty-three counts of evading currency reporting requirements by structuring financial transactions, in violation of 18 U.S.C. § 2 and 31 U.S.C. § 5324(a)(3); and seven counts of evading currency reporting requirements by causing a domestic financial institution to fail to file a currency transaction report, in violation of 18 U.S.C. § 2 and 31 U.S.C. § 5324(a)(1).

Beras, through counsel, raises a host of challenges to his convictions, all but one of which we consider and reject in this summary order. The remaining argument— that Beras' convictions for international money laundering under 18 U.S.C. § 1956(a)(2) were improper because he did not engage in a "transfer" of funds within the meaning of the statute—we discuss, and reject, in an opinion separately issued today.

In addition, Beras has raised in several "*pro se* supplemental briefs" the claim that his trial counsel was ineffective. Those claims are more properly the subject of a petition for habeas corpus under 18 U.S.C.

§ 2255, and we therefore will not address them here.

## I.

At all relevant times, Beras served as co-owner and vice-president of Dinero Express, Inc. ("Dinero"), a licensed money remitter that specialized in transmitting money on behalf of customers in the United States to locations in the Dominican Republic and Puerto Rico. The evidence adduced at trial showed that between 1994 and 1996, Beras—in conjunction with other Dinero co-owners and officers—used Dinero and its employees in furtherance of an extensive international money laundering scheme. In exchange for commissions that generally totaled five percent of each transaction, Beras and his co-conspirators accepted from area drug traffickers cash deposits known to be the proceeds of illegal narcotics sales, and then, via a number of different techniques, arranged for the transport or transfer of those deposits from Dinero's headquarters in Manhattan to members of the traffickers' networks located in the Dominican Republic and Puerto Rico.

Besides the physical transport of cash in suitcases aboard airlines, another laundering practice engaged in by Beras involved the transfer of drug proceeds to the Dominican Republic under the guise of phony money remittances through a four-step process. First, drug traffickers delivered their cash to Dinero's New York headquarters for gradual deposit into the company's bank accounts in the United States. Second, Dinero remittance invoices were generated for fictitious transactions to the Dominican Republic; the invoices used false identities and addresses and were made out in amounts small enough to avoid currency reporting requirements.[1] Third, arrangements were made for a Dominican "peso supplier" to advance local currency—in the same amount as the original deposit delivered to Dinero's New York headquarters, minus commission—to Dinero's Dominican office, which in turn forwarded the cash to the drug traffickers' Dominican personnel under the pretense of fulfilling the fictitious remittances generated in New York. Fourth, the process culminated with Dinero's repayment of the peso supplier through a wire transfer of funds from Dinero's New York operating account to the peso supplier's bank accounts in the United States.

After a four-week trial, the jury returned a verdict convicting Beras on all eighty-two counts in the indictment. Beras was sentenced to 292 months' imprisonment, three years' supervised release, and a $4,100 mandatory special assessment, and was additionally subjected to an order of forfeiture in the amount of $10 million. This timely appeal followed.

## II.

■ Beras contends that the District Court ought to have dismissed the indictment for pre-indictment delay as he was not indicted until five years after the completion of the charged criminal conduct. To prevail on a claim of pre-indictment delay arising under the Fifth Amendment, a defendant must "bear the 'heavy burden'" of showing, *inter alia*, that the delay was "a course intentionally pursued by the government for an improper purpose." *United States v. Cornielle*, 171 F.3d 748, 752 (2d Cir.1999). An improper purpose, argues Beras, was evidenced in this case by the government's withholding of

---

1. The purpose of this step was to disguise a single payment to and from Dinero of a sum of money in excess of the currency reporting threshold as multiple payments to and from Dinero, each for a sum well under the reporting threshold.

charges until a time when it had obtained the cooperation of other Dinero co-conspirators. Yet, the case agent assigned to the Dinero investigation explained that the extra time was required to

> analyze[ ] the documents seized from Dinero Express and debrief[ ] witnesses and cooperating defendants. In addition, [he] received additional documents from some of these cooperating defendants that required extensive analysis.

Houlihan Aff. ¶ 3. The government's decision to refrain from charging a defendant pending investigation of his conduct is not, absent more, an "improper" pre-indictment delay. *See United States v. Lovasco*, 431 U.S. 783, 791, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) ("[P]rosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt."). To the contrary, "[r]ather than deviating from elementary standards of 'fair play and decency,' a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt." *Id.* at 795, 97 S.Ct. 2044. Thus, "to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." *Id.* at 796, 97 S.Ct. 2044. Without sufficient evidence of improper motive, the District Court correctly denied Beras' motion to dismiss the indictment for preindictment delay.

## III.

Beras also appeals from the District Court's denial of his motion for severance. In that motion—which Beras raised for the first time following opening statements and again renewed at the close of evidence—Beras contended that the defenses of his co-defendants were mutually antagonistic to his defense because both co-defendants alleged that they were instructed by their "bosses," which included Beras, to perform the acts described in the indictment.

Rule 14 of the Federal Rules of Criminal Procedure permits the District Court to "grant a severance of defendants" if "it appears that a defendant ... is prejudiced by a joinder of ... defendants in an indictment." The rule commits the decision to sever a joint trial "to the sound discretion of the trial judge," *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989), *cert. denied*, 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990), and a district court's denial of a severance motion is reversible only if a defendant can "show prejudice so severe that his conviction constituted a miscarriage of justice and that the denial of his motion constituted an abuse of discretion," *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir.1993) (internal citations omitted), *cert. denied*, 511 U.S. 1042, 114 S.Ct. 1565, 128 L.Ed.2d 211 (1994). "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent a jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). Such a risk might occur if evidence inadmissible against one defendant but probative of guilt is admitted against a co-defendant, or if exculpatory evidence is excluded due to a co-defendant's presence. *Id.* In most cases, however, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.*

Beras identifies no specific trial right that was infringed by his co-defen-

dants' defenses. No incriminating evidence was admitted that would have been withheld had Beras been tried separately, nor was any potentially exculpatory material hidden from the jury's view as a consequence of the joint trial. Beras instead rests on the proposition that antagonistic defense theories are presumptively prejudicial under Rule 14—a proposition that the Supreme Court in *Zafiro* squarely rejected. *See* 506 U.S. at 538, 113 S.Ct. 933. In any event, the District Court cured any risk of prejudice by instructing the jury of the government's burden of proving each defendant's guilt beyond a reasonable doubt, and reminding the fact-finders of their duty to evaluate the evidence against each defendant independently.

## IV.

█ Beras challenges various evidentiary rulings of the District Court, all of which we review for abuse of discretion. *United States v. Taubman,* 297 F.3d 161, 164 (2d Cir.2002) (per curiam). First, the District Court prohibited Beras from eliciting testimony concerning the credibility of a government informant after tapes of conversations between the informant and Beras had been admitted into evidence. Beras argues that his inability to delve into topics such as the amount of money paid to the informant by the government and the informant's prior perjury violated the Confrontation Clause. But as the tape recordings of the informant's statements were admitted solely to place Beras' own recorded statements in context and not for the truth of the matters asserted, the informant's credibility was simply irrelevant. *See United States v. Barone,* 913 F.2d 46, 49 (2d Cir.1990).

█ Second, the District Court admitted expert testimony by an FBI agent on the money remitting business in general, the operations of legal and illegal money remitters, and the connections between drug trafficking and money laundering. Beras claims that such testimony violated our decisions in *United States v. Cruz,* 981 F.2d 659, 659 (2d Cir.1992), and *United States v. Castillo,* 924 F.2d 1227, 1231 (2d Cir.1991). *Castillo* and *Cruz* are inapposite. In those cases, our concern was that the government had used an expert witness to bolster an essential fact in dispute—whether in *Castillo* the defendant really did use a gun as part of his drug deal and whether in *Cruz* the defendant really was present during the relevant narcotics transactions. Here, by contrast, the dispositive question at trial was whether Beras—as evidenced through his conduct—intended to structure and launder monies in furtherance of a drug trafficking enterprise and to avoid financial reporting requirements. Indeed, Beras' sole defense was that he had no knowledge of the Dinero laundering operations, and that the government's cooperating witnesses "repeatedly lied ... about [his] involvement" in order "to save their own skins." The expert testimony thus had no role, potential or actual, in bolstering the essential fact in dispute in this case: Beras' state of mind. This point is borne out by the fact that, unlike in *Castillo* and *Cruz,* the government in summation never referred to the expert testimony as somehow corroborative of Beras' unlawful state of mind. *See United States v. Tapia–Ortiz,* 23 F.3d 738, 741 (2d Cir.) ("Our conclusion that no error occurred in this case is supported by the fact that the Government did not place great emphasis on [the expert]'s testimony in its summation."), *cert. denied,* 513 U.S. 877, 115 S.Ct. 206, 130 L.Ed.2d 136 (1994).

Third, the District Court admitted falsified remittance forms into evidence under the "business records exception" of Fed. R.Evid. 803(6). Whether or not the forms were appropriately admitted under Rule

803(6), the forms were also admissible because those documents were used by the government, not for their truth, but to demonstrate the co-conspirators' efforts in concealing their illegal structuring and laundering activities. *See United States v. Sliker,* 751 F.2d 477, 489 (2d Cir.) (records not hearsay where "admitted not to establish the truth of the matters asserted but rather to prove the sham nature of the [transactions]"), *cert. denied,* 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832 (1985).

## V.

■ Beras next argues that his convictions for money laundering and structuring are multiplicitous in violation of the Double Jeopardy Clause because the act of "structuring" the transferred funds was an integral component of the laundering operation as a whole. Although Beras concedes that the test in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), is satisfied because the money laundering statute and the structuring statute each requires proof of a fact that the other does not, he nevertheless argues that *Blockburger* does not control because, in enacting both statutes through a single legislative act—the Money Laundering Control Act of 1986, Pub.L. No. 99–570, 100 Stat. 3207 (Oct. 27, 1986)—Congress impliedly intended to prohibit cumulative punishment. The Supreme Court rejected such reasoning in *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), a case involving cumulative punishments for conspiracy to import and distribute marijuana, in violation of 21 U.S.C. §§ 846 and 963. The Su-

preme Court found it unavailing to draw any inference concerning cumulative intent from the fact that both statutes were enacted pursuant to a single bill, the Comprehensive Drug Abuse Prevention and Control Act of 1970. Noting that "Congress is predominantly a lawyer's body" and hence is presumed to "know the law," the Court concluded that "if anything is to be assumed from the congressional silence ..., it is that Congress was aware of the *Blockburger* rule and legislated with it in mind." *Id.* at 341–42, 101 S.Ct. 1137 (internal quotation marks and citations omitted).

## VI.

The District Court sentenced Beras to 292 months' imprisonment based on a total offense level of 40.[2] The court adopted the recommendations contained in Beras' Pre-Sentencing Report (PSR), which suggested: a base offense level of 23 under U.S.S.G. § 2S1.1(a)(1) (2000) because Beras engaged in a conspiracy to launder money with the intent to promote narcotics trafficking, in violation of 18 U.S.C. § 1956(a)(3)(A);[3] a ten-level enhancement under U.S.S.G. § 2S1.1(b)(2)(K) (2000) because the total amount of laundered funds approximated $27 million; a four-level enhancement under U.S.S.G. § 3B1.1(a) (2000) because Beras was the "organizer or leader" of a laundering operation that "involved five or more participants;" and a three-level enhancement under U.S.S.G. § 2S1.1(b)(1) (2000) because Beras "knew or believed that the funds were the proceeds of an unlawful activity involving the manufacture, importation, or distribution

---

2. Pursuant to U.S.S.G. § 3D1.2(d) (2000), all of the counts for which Beras was convicted were grouped together for purposes of a single sentence.

3. Because all of Beras' crimes were grouped together pursuant to U.S.S.G. § 3D1.2(d), the base offense level used was that of the count which yielded the highest base offense level—the money laundering conspiracy count. U.S.S.G. § 3D1.3(b) (2000).

of narcotics." Due to the absence of any known prior criminal convictions, Beras' final sentencing range fell between 292 and 365 months' imprisonment.

■ On appeal, Beras contends that the District Court exceeded its discretion when it concluded, based on its own independent reading of the evidence, that the object of Beras' money laundering conspiracy was to promote narcotics trafficking, in violation of 18 U.S.C. § 1956(a)(3)(A). The Guidelines, however, permit the District Court to do exactly as it did. Where a conspiracy count alleges multiple objects of the conspiracy, U.S.S.G. § 1B1.2(d) provides:

> A conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit.

Application Note 4 of the Commentary accompanying U.S.S.G. § 1B1.2 further advises that:

> Particular care must be taken in applying [U.S.S.G. § 1B1.2(d) ] because there are cases in which the verdict or plea does not establish which offense(s) was the object of the conspiracy. *In such cases, subsection (d) should only be applied with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense.* (emphasis added).

The District Court therefore acted within its discretion when it applied a base offense level of 23 pursuant to U.S.S.G. § 2S1.1(a)(1) (2000).

Beras further challenges, as clear error, each of the District Court's sentencing enhancements. Under the Sentencing Guidelines, "disputed facts relevant to sentencing ... need be established only by a preponderance of the evidence." *United States v. Concepcion*, 983 F.2d 369, 388 (2d Cir.1992), *cert. denied*, 510 U.S. 856, 114 S.Ct. 163, 126 L.Ed.2d 124 (1993). In reaching its factual conclusions, the sentencing court "remains entitled to rely on any type of information known to it." *Id.* We have carefully reviewed the record and conclude that the District Court's 17–level enhancement was not clearly erroneous.

## VII.

In the course of this appeal, Beras filed two "supplemental *pro se* briefs" charging his trial counsel with ineffective assistance on various grounds. We have expressed "a baseline aversion to resolving ineffectiveness claims on direct appeal." *United States v. Williams*, 205 F.3d 23, 35 (2d Cir.), *cert. denied*, 531 U.S. 885, 121 S.Ct. 203, 148 L.Ed.2d 142 (2000). This is because

> [i]neffective assistance claims are often based on assertions that trial counsel made errors of omission, errors that are difficult to perceive from the record: for example, neglecting to call certain witnesses or introduce certain evidence. The claims might also be based on a conflict of interest not apparent at trial. Proof is sometimes provided in attorney-client correspondence, or in other documents not introduced at trial.

*Billy–Eko v. United States*, 8 F.3d 111, 114 (2d Cir.1993), *superseded by statute on another ground as stated in Triestman v. United States*, 124 F.3d 361, 369 n. 8 (2nd Cir.1997). As Beras' ineffective assistance of counsel claims "require[ ] consideration of evidence not contained in the record, we will not reach it here, and if [Beras] wishes to pursue the issue, he must raise it on a collateral attack of his convictions." *United States v. Joyner*, 313 F.3d 40 (2d Cir. 2002).

**VIII.**

For the reasons set forth above, the judgment of the district court is hereby **AFFIRMED.**