**UNITED STATES of America,**
**Appellee,**

v.

**Emanuel SCOTT, Anthony Scott,**
**Defendants–Appellants.**

**Nos. 05–6078–cr(L), 05–6080–cr(CON).**

United States Court of Appeals,
Second Circuit.

May 18, 2007.

Winston Y. Chan, Assistant United States Attorney (Peter A. Norling, Assistant United States Attorney, on the brief), for Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Brooklyn, New York, for Appellee.

Herman Kaufman, Old Greenwich, Connecticut, for Appellant Emanuel Scott.

Colleen P. Cassidy, Federal Defenders of New York, Inc., New York, New York, for Appellant Anthony Scott.

Present: Hon. RALPH K. WINTER, Hon. SONIA SOTOMAYOR, Hon. PETER W. HALL, Circuit Judges.

### SUMMARY ORDER

Defendants-appellants Emanuel Scott ("Emanuel") and Anthony Scott ("Anthony") appeal from the November 7, 2005 and November 9, 2005 judgments of the United States District Court for the Eastern District of New York (Gleeson, J.), convicting them, following a jury verdict, of possessing counterfeit United States currency with intent to defraud in violation of 18 U.S.C. § 472. Emanuel was sentenced principally to eighteen months' imprisonment and Anthony to three years' probation. In this appeal, each defendant has raised discrete challenges to his conviction. We assume the parties' familiarity with the underlying facts of the case, its procedural history and the arguments on appeal.

*Emanuel Scott's Claims*

■ Emanuel first challenges the district court's denial of his motion to suppress evidence obtained during an inventory search of his Mercedes after it was impounded at the time of Anthony's arrest. He claims the impoundment violated the Fourth Amendment primarily because (1) the police did not have probable cause to arrest Anthony for "reckless endangerment," and (2) even if they did, the police should have notified Emanuel to come pick up the vehicle rather than impound it. We agree with the district court that Anthony's driving the wrong way down a one-

way street, among other conduct, gave the officers probable cause to arrest him for reckless endangerment. *See United States v. Scopo*, 19 F.3d 777, 780–82 (2d Cir.1994) (holding that an officer who observes a traffic offense has probable cause to stop and arrest the driver). Following the valid arrest, the police were permitted to impound the vehicle and conduct an inventory search pursuant to standard procedures. *See United States v. Perea*, 986 F.2d 633, 643–44 (2d Cir.1993); *see also Colorado v. Bertine*, 479 U.S. 367, 373–74, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) (holding that the Fourth Amendment does not require police to use less intrusive means than impoundment); *People v. Figueroa*, 6 A.D.3d 720, 776 N.Y.S.2d 574, 575 (2d Dep't 2004) (holding that, following defendant's arrest for driving without a license, impoundment of his vehicle was proper).[1]

◼ Second, Emanuel testified in his own defense. On cross-examination, the prosecutor was permitted to ask him about his earlier refusal, during the police investigation, to provide the explanation of his innocence that he had just presented at trial. Emanuel contends that this line of questioning violated his Fifth Amendment privilege against self-incrimination because it encouraged the jury to draw a negative inference from his earlier privileged decision to remain silent. On direct examination, however, Emanuel testified that prior to trial, the police had "never" asked him to explain his role and that it was only at trial that he "finally g[o]t to tell what happened that night." Tr. at 466. Because this testimony "opened the door" to the cross-examination questions, the court did not err in permitting the questions and providing a limiting instruction to the jury.

*See United States v. Matthews*, 20 F.3d 538, 552 (2d Cir.1994) ("[W]hile comment on a defendant's silence is usually improper, such comment may be permissible when the defendant, by the impression he has sought to create, has opened the door.").

◼ Finally, Emanuel objects to the district court's omission of a missing witness instruction with respect to the government's failure to call Robert Jarvis. Emanuel concedes that he did not request this charge below, and so our review is for plain error. *See* Fed.R.Crim.P. 52(b). On appeal, Emanuel points to no evidence supporting his speculation that Jarvis was within the government's control and that it could have located him but chose not to do so. The district court therefore did not commit plain error in failing to include the instruction. *See United States v. Mittelstaedt*, 31 F.3d 1208, 1216 (2d Cir.1994) ("A missing witness charge inviting the jury to infer that the testimony of an uncalled witness might have favored a specified party is appropriate if production of that witness is peculiarly within the power of the other party." (internal quotation marks and alterations omitted)).

### Anthony Scott's Claim

◼ Reviewing the trial court's exclusion of evidence for abuse of discretion, *United States v. Taubman*, 297 F.3d 161, 164 (2d Cir.2002), we find no merit to Anthony's argument that we should grant a new trial because the district court improperly excluded an exculpatory statement made by Jarvis to Agent Michael De Martino. We need not determine whether

---

1. Emanuel appears also to contend that the inventory search was not a valid search incident to arrest. However, this argument does not bear on whether the vehicle was appropriately *impounded* pursuant to the arrest, which provides an independent basis for the search. *See Perea*, 986 F.2d at 643–44 (explaining that searches incident to arrest and inventory searches of impounded property rely on different rationales).

Jarvis's statement was nonhearsay that should have been admitted, because even if we assume error for purposes of this appeal, the error was harmless. *Id.* at 165 (ruling that "any error in the District Court's evidentiary rulings was, in the particular circumstances presented, harmless"). Indeed, Anthony claims that the exclusion of Jarvis's statement affected the verdict by not permitting the jury to hear evidence of De Martino's state of mind when he decided that Jarvis was no longer a suspect in the crime. But the jury heard testimony from De Martino at trial that he had ruled Jarvis out given that his fingerprints were not on the Western Union documents, that "it wasn't his vehicle that the [counterfeit] money was found in," and that the stolen identification cards "were not found on his person." It is clear that the exclusion of De Martino's statement did not have a "substantial and injurious effect or influence in determining the jury's verdict," *United States v. Dukagjini,* 326 F.3d 45, 62 (2d Cir.2003) (internal quotations omitted), and thus any error was harmless.

■ Anthony has also challenged the sufficiency of the evidence supporting his conviction, conceding that in doing so he "shoulders a heavy burden." *United States v. Jones,* 393 F.3d 107, 111 (2d Cir.2004). We agree with Anthony that the government's speculation that he "probably" recognized them in the alleyway, as well as evidence equally inculpating both Anthony and Emanuel,[2] would not, standing alone, support the jury's finding that he had knowledge that the bills were counterfeit and that he had intent to defraud. The jury was also presented with evidence, however, that (a) the Western Union forms, which were fraudulently made out in Elizabeth Scheessele's name, were written in Anthony's handwriting,[3] and (b) Anthony's fingerprints appeared on the Western Union forms and counterfeit bills. In light of this evidence, a rational trier of fact could have concluded that Anthony was aware the bills were counterfeit and therefore sought to disguise the transfer. *See United States v. Autuori,* 212 F.3d 105, 114 (2d Cir.2000) (holding that a jury verdict must be upheld if a rational trier of fact "could have found the essential elements of the crime beyond a reasonable doubt" (internal quotation marks omitted)).

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

**2.** For example, the government adduced evidence that the cell phone fraudulently taken out in Elizabeth Scheessele's name repeatedly called the apartment where Anthony lived and Emanuel stayed, and that the Western Union forms were addressed to individuals known to both brothers.

**3.** The handwriting expert's testimony that Anthony "probably" wrote the handwriting on the forms indicated that she was "virtually certain" that her analysis provided "strong evidence pointing towards" a match between Anthony's handwriting and that on the forms. Furthermore, the jury was free to draw conclusions from its own comparison of the handwriting samples. *See United States v. Samet,* 466 F.3d 251, 255 (2d Cir.2006) (noting that a jury is capable of making handwriting comparisons).