******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* DANIEL W. E.*
(SC 19341)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald,
Espinosa and Robinson, Js.

*Argued September 8, 2015—officially released August 23, 2016*

*Glenn W. Falk*, assigned counsel, for the appellant
(defendant).

*Marjorie Allen Dauster*, senior assistant state's attorney, with whom were *Andrew J. Slitt*, assistant state's
attorney, and, on the brief, *Patricia M. Froehlich*, state's
attorney, for the appellee (state).

*Opinion*

ZARELLA, J. Following a jury trial, the defendant, Daniel W. E., was found guilty of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and one count of risk of injury to a child in violation of General Statutes (Rev. to 2001) § 53-21 (a) (2). The victim, his daughter, was between six and nine years old at the time of the assaults. The trial court rendered judgment in accordance with the jury verdict and sentenced the defendant to a total effective sentence of twenty-five years incarceration followed by twenty years of special parole. On appeal,[1] the defendant claims that the trial court improperly instructed the jury on the use of constancy of accusation evidence and that the constancy of accusation doctrine, particularly in child sexual abuse cases, should be abandoned or modified because of increased public awareness regarding the reasons why children delay in reporting sexual abuse. The defendant further claims that the testimony of multiple constancy witnesses is unnecessary and prejudicial, and that other ways exist of ensuring fairness to the victim. The state responds that the trial court properly instructed the jury on the use of constancy evidence and that the defendant has failed to offer any cogent rationale for modifying or abandoning the doctrine. We conclude that the trial court's jury instruction was proper but that the constancy of accusation doctrine should be modified.

The record reveals the following relevant facts and procedural history. The victim was born in March, 1996. In 2001, after her parents separated, the victim was living with her mother and two brothers in the town of Plainfield, and the defendant was living with his parents in the town of Brooklyn. From the time she was six years old, the victim and her brothers visited the defendant every other weekend. During each visit, the defendant sexually assaulted the victim at least once for the next three years. The assaults usually occurred in the bedroom or during bath time, when the defendant and the victim were alone. On one occasion, when the victim's younger brother awoke from a nap in the children's bedroom and asked why the defendant was lying on top of the victim, the defendant responded, "[t]his is our thing." The visits and the assaults ceased when the victim was nine years old.

The victim did not remember the assaults as painful and did not tell her mother, her grandparents or her pediatrician about them because she did not know they were wrong. She simply thought the defendant was doing "what fathers and daughters did." Although she repeatedly asked the defendant to stop, he continued the abuse. The victim's only complaint to her mother about the visits was the presence of cigarette smoke inside the house, which made her feel sick. Both of the victim's older stepsisters, M and D, also were sexually

abused by the defendant when they were very young, but the victim was unaware of this when she was being abused.

In 2007, after D told the victim that she had been sexually abused in the past, the victim confided in D that she had been sexually assaulted by the defendant over an extended period of time, and then started crying.[2] D responded that the victim should tell her mother or report the abuse to the police, but the victim did not do so. Two years later, in October, 2009, the victim also told a former boyfriend, S, during a telephone conversation that she had been sexually abused by the defendant multiple times.

In October, 2009, after the victim finally told her mother, she reported the abuse to the police. The report was triggered by an incident involving the victim and the defendant at a restaurant. The victim had arranged to meet the defendant at the restaurant, even though she was not permitted to contact him at that time and had not obtained her mother's permission or informed her about the arrangement. Upon initially meeting and hugging the defendant, the victim noticed the defendant had an erection. This caused her to have flashbacks regarding her past abuse by the defendant and prompted her to tell the police. She also told the police she had had a brief sexual relationship with her then boyfriend, B, a few months earlier.

The state arrested the defendant and charged him with two counts of sexual assault in the first degree and one count of risk of injury to a child. The defendant elected to be tried by a jury. In a pretrial motion in limine, the defendant requested, among other things, that the trial court (1) give a limiting instruction regarding any properly admitted constancy of accusation evidence, (2) exclude all constancy evidence, including any direct or indirect reference thereto, until after the victim testified, (3) preclude constancy evidence derived from reports after the victim's official complaint to the police or the Department of Children and Families, (4) limit " 'corroborative' " evidence to the fact and timing of the victim's complaint, when, where, and to whom the complaint was made, and the identity of the alleged perpetrator, and (5) exclude cumulative constancy evidence to the extent its probative value was outweighed by its prejudicial effect and the jury was likely to treat the evidence as substantive evidence of the defendant's guilt. The defendant also urged the trial court to instruct the jury that any delay by a victim in reporting a complaint of sexual abuse to a friend or relative affects the weight to be given such evidence and should be considered by the jury. The defendant argued in part that, although the constancy of accusation doctrine has a long history in Connecticut, its continued relevance requires reconsideration because its underlying rationale has been increasingly questioned

in recent years.

Following a hearing, during which counsel for both parties failed to engage in any substantive argument,[3] the trial court granted the motion in limine insofar as it sought to limit constancy evidence to statements made prior to the victim's official report of abuse and to preclude such evidence considered potentially redundant or cumulative. The court emphasized that it would not exclude any evidence at that time but that defense counsel could object if he believed the assistant state's attorney (prosecutor) was not exercising reasonable restraint. Thereafter, in its preliminary instructions to the jury, the trial court included a general instruction that certain evidence admitted at trial was to be considered only for a limited purpose and that the court would identify this evidence at the time of its admission.[4]

At trial, defense counsel did not object when the victim testified that she had never told anyone about the abuse until several years later. When the prosecutor called S as the first constancy witness, however, defense counsel objected to his testimony on hearsay grounds. After the court overruled the objection, S testified that the victim told him during a telephone conversation in 2009 that the defendant had molested her "multiple times" when she was five or six years old. He also testified that, two days later, he urged the victim in another telephone conversation to tell her mother about the abuse.

D, the second constancy witness, testified without objection that the victim told her she had been sexually abused by the defendant over a long period of time, and then started crying. The victim's mother also testified without objection that the victim did not tell her about the abuse until 2009 or 2010, even though the mother had explained "good touch-bad touch" to the victim when the victim was younger and that no healthcare provider had noted the presence of injuries during regular pediatric checkups from 2001 to 2004 that might have been caused by sexual abuse.

Erica Kesselman, a physician who examined the victim in December, 2009, after the victim reported the abuse to the police, testified that, although she observed injuries to the victim that could have been caused by the victim's consensual sexual relationship with B during the summer of 2009, the injuries also were consistent with the victim's reported history of sexual abuse and with medical findings concerning girls who have been forcibly penetrated before reaching puberty. Kesselman further testified that the fact that the victim had been sexually active for a brief time prior to reporting the abuse to the police did not affect her conclusions because the victim's injuries were more common in abuse cases than in cases in which there has been consensual intercourse.

Theresa Montelli then testified for the state as an expert witness regarding the characteristics of sexually abused children. She explained that there is often a delay in reporting abuse due to factors such as the family relationship between the child and the abuser, the abuser's telling the child to keep the abuse a secret, the child's loyalty to the abuser, the child's difficulty in talking about the abuse, threats or coercion by the abuser, and the child's feelings of fear, shame and self-blame. Montelli also testified that children sometimes fail to realize that what is happening to them is wrong, and they only become aware of this at some later time, such as in a health class at school. She added that disclosure by many children may involve a process in which they begin by revealing to a friend only a little about what happened and gradually provide more detailed information during an investigation or therapy as their comfort level and sense of safety increase.

At the close of the evidence, the trial court gave the parties its proposed jury instructions and requested that counsel review them in preparation for the next day's charging conference. Before the conference, however, defense counsel also submitted his own request to charge, which included a proposed instruction on constancy testimony.[5] After the trial court rejected counsel's proposed instruction during an in-chambers charging conference, counsel requested that the court use Connecticut's standard criminal jury instruction[6] because of differences in "semantics, language [and] placing of the paragraphs" that rendered the standard instruction purportedly less prejudicial than the trial court's proposed instruction. Counsel specifically argued that there were "subtle" differences between language in the trial court's instruction and language in the standard instruction pertaining to what was to be corroborated by the constancy testimony. He explained his concern that such testimony might be construed by the jury as corroborating the substance of the victim's complaint to the witnesses rather than the fact that the victim had complained, and that the court's proposed instruction did not make this distinction clear. He conceded that the standard instruction and the court's proposed instruction were "pretty much the same," but, "looking at the gestalt of these two instructions, it's the subject[ive] feeling of . . . defense counsel that, because of the placement of [the] language . . . [the standard instruction is] a little bit less prejudicial . . . ."

The trial court responded that any "nuance" to which counsel had referred was "so subtle that [the court was] not inclined in the gestalt of the case overall to believe that it's going to be determinative." The court thus declined to revisit its earlier decision and rejected counsel's request to use the standard criminal jury instruction. Shortly thereafter, when defense counsel noted

for the record that he had made a general objection to the constancy charge, the trial court summarized: "As to the constancy of accusation charge, which we've just discussed briefly, we discussed it in greater length in chambers, [and] I determined that I would use the language I had originally drafted."

The prosecutor did not refer to the constancy testimony during his closing argument. Defense counsel, however, challenged the victim's credibility on the ground that she had not reported the abuse to anyone during the three years when the abuse allegedly was occurring and because she had shown no outward manifestations of physical abuse during that time. Counsel specifically noted that S "wasn't here to testify as to whether or not it happened [because] he couldn't say, just that sometime in October of [2009], while they were dating, she supposedly made this disclosure to him."

The prosecutor argued in rebuttal that the victim's testimony, if credited, was sufficient to prove that the defendant was guilty and thus need not be corroborated. He then argued: "However, I would submit that the state did corroborate her testimony. You heard from [S], who's known her since he was seven [years old]. [She] told [him] in 2009, 'my father raped me multiple times.' That was his testimony. Also, [D]. She's known [the victim] for ten years, [and] considers her her sister. What . . . did [the victim] say to [D]? 'My dad raped me.' And I cried—or she then cried and then . . . told [D] it happened often and for a long time. Think about how those two statements are consistent with each other and with what [the victim] told you." The prosecutor also referred to the fact that the victim's mother, D, S, and Kesselman all testified that the defendant had sexually assaulted the victim.[7]

The trial court then excused the jury, and defense counsel objected to several portions of the prosecutor's closing argument, including his contention during rebuttal argument that the victim's testimony was corroborated by the constancy evidence. The trial court responded that defense counsel's observation was "correct" and that it would clarify in its jury instructions how the constancy evidence should be used. The court specifically stated that its "plan [was] to let the jury know that the import of [the constancy] testimony [was] that [the victim] made these statements. It [did] not mean that the statements [were] necessarily true. They [were] simply statements made, and . . . the jury [could] consider those in its calculation of all the credibility issues."

The trial court subsequently gave the following instruction to the jury: "I mentioned to you in my opening remarks that sometimes evidence is admitted for a limited purpose. And I have admitted some evidence in this case with that limitation, and you must consider that evidence only as it relates to the limits for which

it was allowed and not consider such testimony and evidence in finding any other facts as to any other issue.

"First in that category is what we call constancy of accusation evidence. You will recall that the state offered evidence of out-of-court statements which [the victim] made to other persons that the defendant sexually assaulted her. Specifically, you may recall that [S] and [D] testified as to the statements that she made to each of them regarding the defendant sexually assaulting her.

"Ordinarily, as you may know, statements that are made out of court are not admissible. Under our law, this type of testimony is an exception only permitted in cases alleging a sexual assault and only admitted for the limited purpose of corroborating what the complaining witness, [the victim], has testified to in court with respect only to the fact and timing of her complaint, the time and place of the alleged sexual assaults, and the identity of the alleged perpetrator.

"First of all, you may determine that the testimony of these witnesses was not itself credible. If you find their testimony credible as to what [the victim] told them, however, you may only thereupon find that these statements corroborate or support her own testimony. In other words, they are a factor in your determination as to what weight and credibility you will give to [the victim's] testimony as it pertains to the charges of sexual assault.

"If you find that she has been inconsistent, you may consider the degree of inconsistency, and you may also consider the reasons which you find for this inconsistency as you evaluate her testimony.

"[The victim's] delay in reporting the alleged incidents is also something you may consider in assessing her credibility. You may discuss that delay, as well as any reasons which you may find for such delay in evaluating her testimony given in court. You may not deem this evidence of out-of-court statements by the [victim] that [the defendant] perpetrated a sexual assault against her as proof of the truth of what those out-of-court statements asserted.

"In determining whether or not these out-of-court statements corroborate [the victim's] testimony in court, you should consider all of the circumstances under which they were made and to whom, and . . . whether the statements made to those persons were or were not consistent with [the victim's] testimony here in court." Defense counsel did not object to this instruction.

Prior to sentencing, the defendant moved to set aside the verdict and for a new trial. In his motion, the defendant claimed, among other things, that "the jury was at least confused by the [court's constancy] instruction. . . . [T]he instruction was reasonably understood by

the jury to mean that the constancy evidence in fact corroborated the [victim's] testimony, and the jury could not reasonably distinguish between the corroboration language in the charge to the jury and the instruction that that constancy evidence could not be used as substantive evidence that the defendant [sexually assaulted] the [victim]." At the sentencing hearing, defense counsel likewise argued that the trial court's use of the word "corroboration" in its instruction had sent the wrong message to the jury, as had the prosecutor's use of the word "corroboration" during closing argument. Counsel contended that the purpose of constancy testimony is to corroborate that "the complaining witness has made a complaint and the timing of that complaint, and very little more than that," but that the commonly understood meaning of the word "corroborate" is to confirm the substance of what someone else has said, which is how the word was used in the jury charge and in the prosecutor's closing argument. The prosecutor responded that "the court and the state acted within the established limits of the law."

The trial court denied the motion to set aside the verdict and for a new trial. With respect to the jury instruction, the court first observed that Connecticut precedent requires that constancy evidence be limited to the details necessary to associate the victim's complaint with the pending charge, including the time and place of the attack and the identity of the perpetrator. *State* v. *Troupe*, 237 Conn. 284, 304, 677 A.2d 917 (1996). The court then concluded that S's testimony that the victim told him the defendant had sexually assaulted her multiple times when she was five or six years old and D's testimony that the victim told her the defendant had sexually assaulted her did not run afoul of our precedent and that the jury charge concerning this evidence was proper. With respect to the prosecutor's closing argument, the trial court disagreed that the prosecutor's references to the corroborating evidence constituted prosecutorial impropriety because they "were sparse and were a marshaling of the evidence that was before the jury," and the standard for prosecutorial behavior requires more egregious conduct than the prosecutor's conduct in this case. On appeal, the defendant claims that the trial court improperly instructed the jury and that this court should abandon or modify the constancy of accusation doctrine, especially in child sexual abuse cases. We consider each claim in turn.

I

The defendant first claims that the trial court improperly instructed the jury regarding the correct use of constancy of accusation evidence, which is admitted under *Troupe* only to prove that a complaint was made, not to prove that the complaint was true. The defendant specifically claims that the jury instructions were improper in light of the preexisting susceptibility of

jurors to disregard the subtle distinction between constancy evidence and substantive proof, the court's use of dense legal language from an appellate decision, and the trial court's failure to define the word "corroborate." The state responds that it is not reasonably probable that the trial court's instructions misled the jury.[8] We agree with the state that the court's instructions accurately portrayed the law and did not mislead the jury.

"Our review of [a jury instruction] claim requires that we examine the [trial] court's entire charge to determine whether it is reasonably [probable] that the jury could have been misled . . . . While a request to charge that is relevant to the issues in a case and that accurately states the applicable law must be honored, a [trial] court need not tailor its charge to the precise letter of such a request. . . . If a requested charge is in substance given, the [trial] court's failure to give a charge in exact conformance with the words of the request will not constitute a ground for reversal. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . Additionally, we have noted that [a]n [impropriety] in instructions in a criminal case is reversible . . . when it is shown that it is reasonably possible for [improprieties] of constitutional dimension or reasonably probable for nonconstitutional [improprieties] that the jury [was] misled." (Internal quotation marks omitted.) *State* v. *Baltas*, 311 Conn. 786, 808–809, 91 A.3d 384 (2014). Jury instructions regarding constancy of accusation testimony are nonconstitutional in nature. See, e.g., *State* v. *Rivera*, 145 Conn. App. 344, 351–53, 76 A.3d 197 (trial court's failure to give limiting instruction as to constancy of accusation testimony was not matter of constitutional magnitude), cert. denied, 310 Conn. 962, 83 A.3d 344 (2013); *State* v. *Wild*, 43 Conn. App. 458, 467, 684 A.2d 720 (same), cert. denied, 239 Conn. 954, 688 A.2d 326 (1996). "A challenge to the validity of jury instructions presents a question of law over which [we exercise] plenary review." (Internal quotation marks omitted.) *State* v. *Bonilla*, 317 Conn. 758, 770, 120 A.3d 481 (2015).

With respect to the governing legal principles, we concluded in *Troupe* that "a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator. In all other respects, our current rules remain in effect. Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes. Before the evidence may be admitted, therefore, the victim must first have testified con-

cerning the facts of the sexual assault and the identity of the person or persons to whom the incident was reported. In determining whether to permit such testimony, the trial court must balance the probative value of the evidence against any prejudice to the defendant." (Footnote omitted.) *State* v. *Troupe*, supra, 237 Conn. 304–305.

The foregoing principle is codified in § 6-11 (c) of the Connecticut Code of Evidence, which provides: "A person to whom a sexual assault victim has reported the alleged assault may testify that the allegation was made and when it was made, provided the victim has testified to the facts of the alleged assault and to the identity of the person or persons to whom the assault was reported. Any testimony by the witness about details of the assault shall be limited to those details necessary to associate the victim's allegations with the pending charge. The testimony of the witness is admissible only to corroborate the victim's testimony and not for substantive purposes." *Troupe* and § 6-11 (c) of the Connecticut Code of Evidence, in turn, are the basis for standard criminal jury instruction 7.2-1; see footnote 6 of this opinion; which the defense urged the trial court to give to the jury following the court's rejection of its original request to charge.

In the present case, even considering the state's improper suggestion during rebuttal argument that the constancy of accusation evidence supported the substance of the victim's claim, we conclude it is not reasonably probable that the trial court's limiting instruction on constancy evidence misled the jury. The court closely followed the language of *Troupe* and the Connecticut Code of Evidence when instructing that the victim's out-of-court statements to S and D that the defendant had sexually assaulted her were admissible only "for the limited purpose of corroborating what the [victim] . . . has testified to in court with respect only to the fact and timing of her complaint, the time and place of the alleged sexual assaults, and the identity of the alleged perpetrator." The court also instructed that the testimony of the constancy witnesses, if found credible by the jury, could be used to "corroborate or support [the victim's] own testimony. In other words, they are a factor in your determination as to what weight and credibility you will give to [the victim's] testimony as it pertains to the charges of sexual assault." The court subsequently added that "[the victim's] delay in reporting the alleged incidents is also something you may consider in assessing her credibility. You may discuss that delay, as well as any reason which you may find for such delay in evaluating her testimony given in court. You may not deem this evidence of out-of-court statements by the [victim] that [the defendant] perpetrated a sexual assault against her as proof of the truth of what those out-of-court statements asserted."

It is clear from these instructions that the jury was permitted to use the constancy testimony *only* to corroborate the fact and timing of the victim's out-of-court statements to the two constancy witnesses, as well as any other information necessary to associate the victim's out-of-court statements with the pending charge. The instructions also made clear that, although the jury was permitted to consider the constancy evidence in evaluating the weight and credibility of the victim's testimony, including the reasons for her delay in reporting the abuse to the police, the evidence could not be used as proof of the substance or truthfulness of the statements themselves. "The jury is presumed, in the absence of a fair indication to the contrary, to have followed the court's instructions." *State* v. *Parris*, 219 Conn. 283, 294, 592 A.2d 943 (1991). Accordingly, we conclude that the trial court correctly instructed the jury regarding the limited purpose for which the constancy evidence could be considered, thus minimizing the risk of undue prejudice to the defendant.

We reject the defendant's contentions that the jury instructions failed to distinguish between constancy evidence and substantive proof, incorporated too much "dense legal language" and failed to convey the meaning of the word "corroborate." Even if we presume that juries are susceptible to confusion regarding how to use constancy evidence, the defendant has not identified any legal language in the trial court's instruction that was not contained in the instruction defense counsel suggested in his own request to charge or in the standard criminal jury instruction he subsequently asked the court to adopt.

First, with respect to the distinction between constancy evidence and substantive proof, we reiterate that the trial court expressly cautioned the jury to use the constancy testimony "for the limited purpose of corroborating what the [victim] . . . has testified to in court with respect only to the fact and timing of her complaint, the time and place of the alleged sexual assaults, and the identity of the alleged perpetrator." Shortly thereafter, the court added: "You may not deem this evidence of out-of-court statements by the [victim] that [the defendant] perpetrated a sexual assault against her as proof of the truth of what those out-of-court statements asserted." In our view, this instruction was sufficient to distinguish between constancy evidence and substantive proof.

Second, the defendant's argument that the instruction contained too much "dense legal language" is directly contradicted by defense counsel's admission following the charging conference that there were only "subtle" differences between the court's proposed instruction and the standard criminal jury instruction. Counsel further conceded at trial that the two instructions were "pretty much the same" and that, "looking at the gestalt

of these two instructions, *it's the subject*[*ive*] *feeling of . . . defense counsel* that, because of the placement of [the] language . . . [the standard criminal jury instruction is] *a little bit less prejudicial . . . .*" (Emphasis added.) Moreover, the precise "legal" language identified by the defendant as particularly confusing is nearly identical to corresponding language in defense counsel's requested charge.[9] Thus, the trial court's charge did not differ substantively from the defendant's requested charge. Finally, the defendant's contention that New Jersey's model instruction on fresh complaint evidence does a "much better job" of explaining the limited purpose of constancy evidence in terms jurors can readily understand is irrelevant. See generally *State* v. *Hill*, 121 N.J. 150, 578 A.2d 370 (1990). Although we agree with the defendant that New Jersey's model instruction is more detailed than the trial court's instruction in the present case; see Criminal Model Jury Charges—New Jersey Courts: Fresh Complaint (revised February 5, 2007), available at http://www.judiciary.state.nj.us/criminal/charges/non2c011.pdf (last visited August 1, 2016); the defense did not ask the court to adopt the New Jersey instruction, and, even if it had, the trial court's instruction properly explained the manner in which the jury could use the constancy evidence under existing Connecticut law.

Third, neither the Connecticut standard criminal jury instruction nor our precedent suggests or requires that trial courts define the word "corroborate" in an instruction on constancy of accusation evidence, and defense counsel never suggested to the court at any point in the proceedings that the word should be defined. The court used the word in the same way it is used in the standard criminal jury instruction, the Connecticut Code of Evidence and, even more significantly, in the defendant's requested instruction. See footnotes 5 and 6 of this opinion. Accordingly, we conclude that the trial court's instruction in the present case did not mislead the jury or cause the defendant undue prejudice. We suggest, however, that, to ensure clarity in future cases in which constancy evidence is admitted, § 6-11 (c) of the Connecticut Code of Evidence and the standard criminal jury instruction on constancy of accusation evidence should be modified to conform more closely to the language used in New Jersey's model instruction on fresh complaint evidence.[10] The New Jersey instruction explains that evidence of a sexual assault victim's complaint to other persons is admissible only for the purpose of negating any inference that, because there was a delay in reporting the offense, the offense did not occur, and, therefore, such evidence may be used only in considering whether the complaint was made, and not to corroborate the substance of the complaint or to strengthen the credibility of the victim with respect to any other issue.[11]

II

The defendant next claims that the constancy of accusation doctrine is no longer relevant in Connecticut due to changed societal views regarding sexual assault and its effect on victims, and, as a consequence, the doctrine should be abandoned or modified, especially in child sexual abuse cases. He specifically contends that, in the current climate of increased public awareness and understanding of child sexual abuse, the "piling on" of multiple constancy witnesses is unnecessary and overly prejudicial to defendants, and that there are other ways of ensuring fairness to the victim and introducing probative evidence. In the alternative, the defendant suggests that, if the doctrine is not abandoned, it should be limited to a victim's first complaint or to the testimony of the complainant. The state responds that there are no cogent reasons to abandon or modify the doctrine.

It is certainly possible that, because of increased public awareness of the reasons for delayed reporting, many jurors may no longer harbor biases against victims who do not make timely reports that they have been sexually abused. We nonetheless agree with the state that there is no well developed body of scientific research suggesting that these long-standing biases have been entirely eliminated. We thus conclude that the constancy of accusation doctrine should continue to be employed in Connecticut to counter implicit juror bias against victims, including children, who delay in reporting sexual abuse, but in a modified form intended to address the potential prejudice to defendants caused by the testimony of multiple constancy witnesses.

We begin with a brief review of the history and purpose of the constancy of accusation doctrine in Connecticut. In *Troupe*, we explained that the doctrine "traces its roots to the fresh complaint rule"; (internal quotation marks omitted) *State* v. *Troupe*, supra, 237 Conn. 294; "[t]he narrow purpose of [which] . . . was to negate any inference that because the victim had failed to tell anyone that she had been [sexually assaulted], her later assertion of [sexual assault] could not be believed." (Internal quotation marks omitted.) Id., 296. We observed that, "[b]ecause juries were allowed—sometimes even instructed—to draw negative inferences from the woman's failure to complain after an assault . . . the doctrine of fresh complaint evolved as a means of counterbalancing these negative inferences. Used in this way, the fresh complaint doctrine allowed the prosecutor to introduce, during the case-in-chief, evidence that the victim had complained soon after the [sexual assault]. Its use thereby forestalled the inference that the victim's silence was inconsistent with her present formal complaint of [assault]. . . . In other words, evidence admitted under this doctrine effectively served as anticipatory rebuttal, in that the doctrine often permitted the prosecutor to bolster the credibility of the victim before her credibility had

first been attacked. . . . The fresh complaint doctrine thus constituted a rare exception to the common-law rule that prohibited rehabilitative evidence in the absence of an attack on the [witness'] credibility." (Citations omitted; internal quotation marks omitted.) Id.

We further explained that, following its adoption by this court in *State* v. *DeWolf*, 8 Conn. 93, 100 (1830), the fresh complaint doctrine applied for forty-six years until it was modified in *State* v. *Kinney*, 44 Conn. 153 (1876). *State* v. *Troupe*, supra, 237 Conn. 297. In *Kinney*, the court "expanded the rule to permit the state to introduce testimony concerning the details of the complaint," at which time it became known as "the constancy of accusation doctrine." Id.; see *State* v. *Kinney*, supra, 156–57. We noted that the rule as modified in *Kinney* allowed the state "to introduce the fact of the complaint and the details of the complaint once the victim ha[d] testified regarding the alleged sexual assault and the identity of the person or persons to whom a complaint had been made"; *State* v. *Troupe*, supra, 284; and that, "[s]ubject to a determination by the trial court" that the evidence was "more probative than prejudicial, the state [could] introduce the constancy of accusation testimony of each of the persons to whom the complainant had reported the sexual assault." Id., 297–98. We added that "the complaint need not have been made promptly after the commission of the alleged offense; any delay in reporting [was] to be considered by the fact finder in evaluating the weight of the constancy of accusation testimony." Id., 298. This rule was applied without modification in sexual assault cases until it was reexamined 120 years later in *Troupe*. See id.

We reiterated in *Troupe* that, although there was no support for an assumption that a delay in the reporting of a sexual assault casts doubt on the victim's credibility, such a misconception still was "not uncommon." Id., 301. We thus continued to acknowledge in *Troupe* the need to "protect against the the unwarranted, but nonetheless persistent, view that a sexual assault victim who does not report the crime cannot be trusted to testify truthfully about the incident"; id., 303; while also recognizing that "a defendant has an interest in not being unreasonably burdened by such accrediting or supporting evidence, which . . . generally is not admissible in the trial of crimes other than sexual assault." Id., 302. Ultimately, because "we [were] not yet willing to reject the constancy of accusation doctrine completely due to biases still extant in our society"; id., 303; we modified the doctrine to allow a constancy witness to testify "only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or

the identity of the alleged perpetrator. In all other respects, our current rules remain in effect. Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes. Before the evidence may be admitted, therefore, the victim must first have testified concerning the facts of the sexual assault and the identity of the person or persons to whom the incident was reported. In determining whether to permit such testimony, the trial court must balance the probative value of the evidence against any prejudice to the defendant.

"In addition, the defendant is entitled to an instruction that any delay by the victim in reporting the incident is a matter for the jury to consider in evaluating the weight of the victim's testimony." (Footnotes omitted.) Id., 304–305.

Twenty years have passed since our decision in *Troupe*. At that time, we noted that every state but California allowed the prosecution to introduce evidence in its case-in-chief of a sexual assault victim's out-of-court complaint;[12] id., 299; with the vast majority of states limiting such evidence to the fact of the complaint and excluding evidence of its details. See id., 299–300 n.14. Prior to *Troupe*, however, Connecticut was not one of those states but, rather, was one of five states[13] that permitted testimony regarding both the fact of the complaint and its details. Id., 299–300. Thus, our decision in *Troupe* to exclude testimony regarding the details of a complaint brought Connecticut law in line with that of most other jurisdictions.

Following *Troupe*, at least two states fully reexamined their rules on the admission of constancy evidence in sexual assault cases and reached strikingly different conclusions.[14] Most recently, the Supreme Court of Vermont rejected the fresh complaint doctrine and determined, without reviewing the limited scientific literature on juror attitudes toward victims in such cases, that a victim's out-of-court complaint is admissible only under the generally applicable rules of evidence. See *State* v. *Madigan*, 122 A.3d 517, 528–30 (Vt. 2015) (rejecting fresh complaint rule as independent evidentiary doctrine on ground that it has become largely supplanted by ordinary rules of evidence, including rules on admission of prior consistent statements to rebut charges of recent fabrication, evidence to establish timing or circumstances of official report, excited utterances, statements made for purposes of medical diagnosis or treatment, and out-of-court statements by children under thirteen years of age or who are putative victims of abuse, neglect, or certain sexual crimes). The Vermont court based its decision in part on its view that most jurisdictions no longer recognize the fresh complaint doctrine; id., 528; which the court characterized as a "historic artifact"; (internal quotation marks omitted) id., 529; but "sensibly prefer to apply

the same rules of evidence in [sexual abuse] cases as in other cases."[15] Id. Accordingly, the court did not consider any other independent rule under which to admit otherwise inadmissible evidence of out-of-court complaints by sexual assault victims.

In contrast, the Supreme Judicial Court of Massachusetts, following an intensive review of the limited scientific literature, determined that ordinary rules of evidence are insufficient to counter persistent juror biases against sexual assault victims who delay in reporting the assault, and, therefore, testimony regarding out-of-court complaints by victims should continue to be admitted under a special evidentiary rule. See *Commonwealth* v. *King*, 445 Mass. 217, 242–48, 834 N.E.2d 1175 (2005) (replacing state's existing fresh complaint doctrine with first complaint doctrine and permitting testimony by victim and third party regarding details of complaint as well as circumstances under which complaint was made), cert. denied, 546 U.S. 1216, 126 S. Ct. 1433, 164 L. Ed. 2d 136 (2006).[16] Significantly, the Massachusetts court recognized the continued necessity for a special evidentiary rule in this context even *after* acknowledging increased public awareness of the reasons for delayed reporting by victims of sexual assault.[17] See id., 238–41.

Referring to several studies on the subject, the court stated: "[Although] we have located little recent research on juror perceptions of [sexual assault] complainants, the research and scholarship of which we are aware suggests that damaging stereotypes persist. Some jurors may continue to believe incorrectly that 'real' victims will promptly disclose a sexual attack.[18] Some jurors may continue to harbor prejudicial misperceptions about the nature of [sexual assault] and . . . allegations [thereof], including that complainants who wear revealing clothing, consume drugs or alcohol, or have unorthodox or promiscuous lifestyles cannot be 'real' victims of [sexual assault]; that forced sex by a spouse or a past partner does not constitute 'real' [sexual assault]; and that false accusations of sexual assault are more frequent than those of other violent crimes.[19] Juror biases may be particularly strong in child [sexual abuse] cases, as some may attribute allegations of sexual assault to the child's imagination or improper adult influence. And jurors may unfairly perceive child complainants as incredible. . . . Both adults and children may delay complaining about sexual assaults but then face claims of fabrication, and the reasons for the behavior of adult and child victims of sexual assault are still widely misunderstood. . . .

"While more than a decade has passed since [the court] last observed that 'juries tend toward considerable and perhaps inordinate skepticism in [sexual assault] cases' . . . that observation has continued vitality. Although many jurors may no longer harbor

stereotypical assumptions concerning the behavior of 'real' [sexual assault] victims, others may still harbor stereotypical assumptions to the effect that victims will immediately disclose a sexual assault and that the absence of a timely complaint suggests fabrication of the assault. There is a continued need in sexual assault cases to counterbalance or address inaccurate assumptions regarding stereotypes about delayed reporting of a sexual assault or about sexual assault victims in general."[20] (Citations omitted; emphasis omitted; footnotes altered.) Id., 238–40.

Although little research on the subject appears to have been published since the decision in *King*, at least one recent law review article examining general juror bias against sexual assault victims has concluded, following a review of the studies cited in *King* and a large body of other research, that damaging stereotypes continue to exist, despite the considerable media attention that has been devoted in recent years to sexual assaults and their impact on adult and child victims. See C. Fraser, "From 'Ladies First' to 'Asking for It': Benevolent Sexism in the Maintenance of Rape Culture," 103 Cal. L. Rev. 141, 184–87 (2015) (discussing sexist stereotypes and possibilities for decreasing juror bias in sexual assault cases). Indeed, that is precisely why Connecticut courts routinely allow the admission of expert testimony to describe the behavior patterns of children who have been sexually abused and the behaviors customarily displayed by the victims of battered woman syndrome. See, e.g., *State* v. *Taylor G.*, 315 Conn. 734, 761, 110 A.3d 338 (2015) ("[I]n cases that involve allegations of sexual abuse of children, we have held that expert testimony of reactions and behaviors common to victims of sexual abuse is admissible. . . . Such evidence assists a jury in its determination of the victim's credibility by explaining the typical consequences of the trauma of sexual abuse on a child." [Internal quotation marks omitted.]); *State* v. *Borrelli*, 227 Conn. 153, 174, 629 A.2d 1105 (1993) (expert testimony is admissible "to describe the behavior patterns typically ascribed to battered [woman] syndrome").

We thus agree with the court in *King* and with the overwhelming majority of other jurisdictions that the generally applicable rules of evidence are insufficient to remedy potential juror bias against victims who delay in reporting a sexual assault. As the court noted in *King*, the spontaneous utterance exception to the hearsay rule allows only for the admission of statements made during or shortly after the commission of the assault, and prior inconsistent statements are allowed only to rebut charges of recent fabrication. See *Commonwealth* v. *King*, supra, 445 Mass. 241; see also Conn. Code Evid. § 6-11 (a) and (b) (3) (prior consistent statements); Conn. Code Evid. § 8-3 (2) (spontaneous utterance hearsay exception). Connecticut's "tender years" hearsay exception is also of limited application, as it pertains

only to certain statements made by victims under thirteen years of age regarding physical abuse by a person who has authority or apparent authority over the child, such as a parent, or regarding sexual abuse. Conn. Code Evid. § 8-10 (effective January 1, 2011), in 72 Conn. L.J., No. 2, pp. 237C through 238C (July 13, 2010). We therefore continue to believe that victims of sexual assault who delay in reporting the offense require protection against presumptive juror bias.[21] At the same time, we conclude that the constancy of accusation doctrine articulated in *Troupe* should be further modified to protect defendants from undue prejudice arising from the "enhanced risk that the jury may be unduly swayed by the repeated iteration of the constancy of accusation testimony." *State* v. *Troupe*, supra, 237 Conn. 303.

Having considered the myriad ways in which other courts have attempted to balance these competing interests, we conclude that the victim in a sexual assault case should continue to be allowed to testify on direct examination regarding "the facts of the sexual assault and the identity of the person or persons to whom the incident was reported." Id., 304–305. Thereafter, if defense counsel challenges the victim's credibility by inquiring, for example, on cross-examination as to any out-of-court complaints or delayed reporting, the state will be permitted to call constancy of accusation witnesses subject to the limitations established in *Troupe*, as modified in this opinion. If defense counsel does not challenge the victim's credibility in any fashion on these points, the trial court shall not permit the state to introduce constancy testimony but, rather, shall instruct the jury that there are many reasons why sexual assault victims may delay in officially reporting the offense, and, to the extent the victim delayed in reporting the offense, the delay should not be considered by the jury in evaluating the victim's credibility.

We believe this modification of our present doctrine achieves a proper balance between the interests of the state and the defendant. The state will retain the ability to introduce testimony by the victim regarding out-of-court complaints to other persons and the victim's reasons for the delayed reporting. In addition, the state will be free to introduce expert testimony regarding the traumatic effect of sexual assaults on victims generally and why sexual assault victims often fail to promptly report the offense. The state also will benefit from the trial court's instruction that the jury is not allowed to consider a delay by the victim in reporting the offense. Defendants will likewise benefit because they no longer will be required to defend against testimony by constancy witnesses unless they choose to challenge the victim's testimony regarding any out-of-court complaints or delayed reporting. In such cases, we believe that trial courts, in the exercise of their discretion, will be able to properly balance the probative value of the

constancy testimony against its prejudicial effect. See id., 305. These modifications, like the rule articulated in *Troupe*, will apply to both adult and child victims of sexual assault. In keeping with our precedent, however, they will apply only prospectively to cases in which the evidentiary portion of the trial has not commenced as of the date of the release of this decision. Finally, because our decision is based solely on policy considerations; see id.; there is no reason to order a new trial when the testimony at issue, as in the present case, has been properly admitted under our former articulation of the doctrine. See id., 305–306.

The judgment is affirmed.

In this opinion ROGERS, C. J., and PALMER, EVELEIGH, McDONALD and ROBINSON, Js., concurred.

\* In accordance with our policy of protecting the privacy interest of victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to § 51-199 (c) and Practice Book § 65-2.

[2] The victim testified she had told D in 2007, two years before she told anyone else, whereas D testified the victim had told her in 2009. In either case, however, it seems clear that the victim told D before she told anyone else, including S or the police.

[3] Defense counsel made no argument, and the assistant state's attorney merely asked the court to give the standard instruction regarding constancy witnesses in criminal cases. See *State* v. *Troupe*, 237 Conn. 284, 304–305, 677 A.2d 917 (1996).

[4] The court instructed in relevant part: "When I mentioned evidence that's admitted for a limited purpose, sometimes, a witness will testify to something that is not going to be fully given weight but is valid for explaining one piece of the picture. And I will say to you, if you accept this testimony, then you may find this particular aspect of the case to be proven, but not all other aspects. It's only a part of the larger picture; it's part of the mosaic. And, so, I'll let you know when evidence is admitted for a limited purpose, and you can just keep in mind that it has only that certain value."

[5] The defendant requested the following instruction, which is reproduced as submitted: "EVIDENCE ADMITTED FOR A LIMITED PURPOSE

"You will recall that I have ruled that some testimony and evidence have been allowed for a limited purpose or for application to one defendant. Any testimony or evidence which I identified as being limited to a purpose or a defendant, you will consider only as it relates to the limits for which it was allowed, and you shall not consider such testimony and evidence in finding any other facts as to any other issue or defendant.

"A) CONSTANCY OF ACCUSATION EVIDENCE

"The complainant testified here in court before you. You may use her testimony as evidence and proof of the facts asserted in that testimony and give it the weight you find is reasonable.

"The state offered evidence of out-of-court statements made by the complainant to other persons that the defendant sexually assaulted her. Those persons to whom the state alleges that she made such statements are: [the complainant's stepsister, D, and her former boyfriend, S]. Under our law, the testimony of these witnesses was limited in its scope to the fact and timing of the complainant's complaint, the time of place of the alleged sexual assaults and the identity of the alleged perpetrator. Each of these people testified as to the statements the complainant made to each of them regarding the defendant sexually assaulting her.

"This evidence is to be considered by you only in determining the weight and credibility you will give the complainant's testimony as it pertains to WHETHER OR NOT THE COMPLAINANT TOLD THE WITNESSES ABOUT THE ALLEGED sexual assault. This evidence of out-of-court statements by the complainant of a sexual assault against her by the defendant is not to be considered by you to prove the truth of the matter asserted in those out-of-court statements.

"In determining whether or not these out-of-court statements corroborate the complainant's testimony in court THAT SHE TOLD THESE WITNESSES OF THE ALLEGED SEXUAL ASSAULTS, you should consider all of the circumstances under which they were made and to whom and whether the statements made to these persons were or were not consistent with the complainant's testimony in court.

"If you find any delay in her reporting the alleged incidents, you may consider such delay and any reasons which you may find for such delay in evaluating her testimony given in court.

"To the extent you find that what she has said outside the courtroom is consistent with her testimony in court, you may find her testimony in court to be corroborated or supported ONLY with respect to the fact and timing THAT SHE MADE A STATEMENT TO OTHERS THAT SHE HAD BEEN SEXUALLY ASSAULTED. To the extent you find that what she has said outside the courtroom is inconsistent with her testimony in court REGARD-ING THE FACT, CONTENT AND TIMING OF HER STATEMENT THAT SHE HAD BEEN SEXUALLY ASSAULTED, you may consider the degree of inconsistency which you find, and you may consider the reasons which you may find for the inconsistency, in evaluating (his/her) testimony given in court.

"In this case, there has been evidence that the complainant told others that she had been sexually molested by the defendant. Such evidence is properly termed 'constancy of accusation' evidence and may be considered by you solely for the purpose of corroborating that the complainant made the accusation of sexual abuse—and as substantive evidence that the defendant is guilty of sexual assault. This evidence of out-of-court statements by the complainant of a sexual assault against her by the defendant is not to be considered by you to prove the truth of the matter asserted in those out-of-court statements, that is, it may not be considered to be evidence of the defendant's guilt."

[6] Connecticut Criminal Jury Instructions 7.2-1 (revised to May 20, 2011), available at http://jud.ct.gov/ji/criminal/Part7/7.2-1.htm (last visited August 1, 2016), provides: "The complainant testified here in court before you. You may use (his/her) testimony as evidence and proof of the facts asserted in that testimony and give it the weight you find is reasonable.

"The state offered evidence of out-of-court statements made by the complainant to other persons that the defendant sexually assaulted (him/her). Those persons to whom the state alleges that (he/she) made such statements are: <identify the witnesses>. Under our law, the testimony of these witnesses was limited in its scope to the fact and timing of the complainant's complaint, the time and place of the alleged sexual assault(s) and the identity of the alleged perpetrator. Each of these people testified as to the statements the complainant made to each of them regarding the defendant sexually assaulting (him/her).

"This evidence is to be considered by you only in determining the weight and credibility you will give the complainant's testimony as it pertains to the charge(s) of sexual assault. This evidence of out-of-court statements by the complainant of a sexual assault against (him/her) by the defendant is not to be considered by you to prove the truth of the matter asserted in those out-of-court statements.

"In determining whether or not these out-of-court statements corroborate the complainant's testimony in court, you should consider all of the circumstances under which they were made and to whom and whether the statements made to these persons were or were not consistent with the complainant's testimony in court.

"If you find any delay in (his/her) reporting the alleged incidents, you may consider such delay and any reasons which you may find for such delay in evaluating (his/her) testimony given in court.

"To the extent you find that what (he/she) has said outside the courtroom is consistent with (his/her) testimony in court, you may find (his/her) testimony in court to be corroborated or supported with respect to the fact and timing of (his/her) complaint, the time and place of the alleged sexual assault(s) and the identity of the alleged perpetrator. To the extent you find that what (he/she) has said outside the courtroom is inconsistent with (his/her) testimony in court, you may consider the degree of inconsistency which you find, and you may consider the reasons which you may find for the inconsistency, in evaluating (his/her) testimony given in court." (Emphasis omitted; footnote omitted.)

[7] The defendant has not challenged Kesselman's testimony on constancy grounds, apparently because her testimony regarding what the victim had

told her in the course of being evaluated and treated was admissible for substantive purposes under the medical treatment exception to the hearsay rule. See Conn. Code Evid. § 8-3 (5).

[8] The state also contends that the defendant's claim of instructional impropriety is unreviewable because defense counsel did not make the arguments in the trial court that the defendant makes on appeal. We disagree.

Practice Book § 16-20 provides in relevant part: "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection. . . ." "It is [this court's] long-standing position that [t]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *State* v. *Darryl W.*, 303 Conn. 353, 371, 33 A.3d 239 (2012).

In the present case, defense counsel submitted a written request to charge and, after the trial court rejected it at the charging conference, argued at trial that the court should use the standard criminal jury instruction on constancy evidence rather than the court's proposed instruction because the proposed instruction failed to clearly explain that the constancy evidence could not be used to establish the truth or substance of the victim's complaint. Thereafter, defense counsel did not object to the trial court's instruction directly after it was given. Rather, the defense waited until two months later at the sentencing hearing in a motion to set aside the verdict and for a new trial, in which the defendant argued that "the jury was at least confused by the instruction." At that time, the defendant contended that the instruction reasonably could be understood as allowing the jury to use the constancy evidence to corroborate the substance of the victim's testimony. He also contended that the court's use of the word "corroboration" in its instruction was unclear and sent the wrong message to the jury. Thus, although the defendant's argument in support of his posttrial motion was more specific than defense counsel's previous objection to the trial court's proposed instruction following the charging conference, defense counsel's prior argument sufficiently preserved the defendant's jury instruction claim on appeal because that claim makes exactly the same underlying point, namely, that the instruction did not clearly convey to the jury that the constancy of accusation evidence could not be used to corroborate the truth or substance of the victim's complaint. Accordingly, we conclude that the defendant's claim of instructional impropriety is reviewable. See, e.g., *Neuhaus* v. *DeCholnoky*, 280 Conn. 190, 216 n.18, 905 A.2d 1135 (2006) (considering three new arguments in support of plaintiff's appellate claim that defendant owed continuing duty to plaintiffs because arguments were made in context of general claim that defendant was under continuing duty to plaintiffs, which claim was consistently advanced in trial court and at all stages of appeal).

[9] (1) (A) CHARGE GIVEN: "[S]tatements that are made out of court are not admissible. Under our law, this type of testimony is an exception only permitted in cases alleging a sexual assault and only admitted for the limited purpose of corroborating what the complaining witness . . . has testified to in court with respect only to the fact and timing of her complaint, the time and place of the alleged sexual assaults, and the identity of the alleged perpetrator."

(1) (B) REQUESTED CHARGE: "Under our law, the testimony of these witnesses was limited in its scope to the fact and time of the complainant's complaint, the time and place of the alleged sexual assaults and the identity of the allege perpetrator."

(2) (A) CHARGE GIVEN: "If you find their testimony credible as to what [the victim] told them, however, you may only thereupon find that these statements corroborate or support her own testimony. In other words, they are a factor in your determination as to what weight and credibility you will give to [the victim's] testimony as it pertains to the charges of sexual assault."

(2) (B) REQUESTED CHARGE: "This evidence is to be considered by you only in determining the weight and credibility you will give the complainant's testimony as it pertains to WHETHER OR NOT THE COMPLAINANT TOLD THE WITNESSES ABOUT THE ALLEGED sexual assault."

(3) (A) CHARGE GIVEN: "You may not deem this evidence of out-of-court statements by the [victim] that [the defendant] perpetrated a sexual assault against her as proof of the truth of what those out-of-court statements asserted."

(3) (B) REQUESTED CHARGE: "This evidence of out-of-court statements

by the complainant of a sexual assault against her by the defendant is <u>not</u> to be considered by you to prove the truth of the matter asserted in those out-of-court statements . . . ."

(4) (A) CHARGE GIVEN: "In determining whether or not these out-of-court statements corroborate [the victim's] testimony in court, you should consider all of the circumstances under which they were made and to whom, and . . . whether the statements made to those persons were or were not consistent with [the victim's] testimony . . . in court."

(4) (B) REQUESTED CHARGE: "In determining whether or not these out-of-court statements corroborate the complainant's testimony in court THAT SHE TOLD THESE WITNESSES OF THE ALLEGED SEXUAL ASSAULTS, you should consider all of the circumstances under which they were made and to whom and whether the statements made to these persons were or were not consistent with the complainant's testimony in court."

[10] We note that this court rejected the fresh complaint doctrine in *Troupe*; see *State* v. *Troupe*, supra, 237 Conn. 298; and we reaffirm our rejection of that doctrine today. The purpose of fresh complaint evidence and constancy evidence, however, is the same, namely, to negate any inference that the victim's prolonged silence before officially reporting the sexual assault suggests that the assault did not occur. Accordingly, an instruction similar to the New Jersey instruction, as revised to eliminate all references to fresh complaint evidence, would be compatible with Connecticut law.

[11] The New Jersey jury instruction; Criminal Model Jury Charges—New Jersey Court: Fresh Complaint, supra; in the following modified form, would be consistent with Connecticut law on the admission of constancy of accusation evidence: "In this case, you heard testimony that, sometime after the alleged sexual offense, (the complainant) made out-of-court statements to other persons (names) about what had taken place. More particularly, there was testimony that (the court should specify the particular testimony to which the constancy of accusation rule applies).

"The law recognizes that people might assume that anyone subjected to a sexual offense would complain within a reasonable time to someone to whom (he/she) ordinarily would turn for sympathy, protection or advice. If there was no evidence that (the complainant) made such a complaint, some might conclude that no sexual offense occurred.

"As a result, in cases involving an allegation of a sexual offense, the state is permitted in certain circumstances to introduce evidence of out-of-court statements to other persons about what occurred. The only reason that the evidence is permitted is to negate the inference that (the complainant) failed to confide in anyone about the sexual offense. In other words, the narrow purpose of the constancy evidence is to negate any inference that (the complainant) failed to tell anyone about the sexual offense and, therefore, that (the complainant's) later assertion could not be believed.

"Constancy evidence is not evidence that the sexual offense actually occurred, or that (the complainant) is credible. It merely serves to negate any inference that, because of (the complainant's) assumed silence, the offense did not occur. It does not strengthen (the complainant's) credibility. It does not prove the underlying truth of the sexual offense. Constancy evidence only dispels any negative inference that might be made from (the complainant's) assumed silence.

"In determining whether a complaint was in fact made, you may consider all the relevant factors in evidence. These include (the complainant's) age, demeanor, background, and relationship with both the defendant and the person(s) to whom the complaint was made. You may also consider the timeliness of the complaint, the context in which the complaint was made, any circumstances that would explain the delay in making the complaint and whether the complaint was volunteered or the result of an interrogation. It is up to you to determine what the facts are with regard to the circumstances of the complaint and what weight to give to these facts in determining whether a complaint was made.

"As I have indicated earlier, this testimony was for a limited purpose. The making of a complaint is not an element of the offense. Proof that a complaint was made is neither proof that the sexual offense occurred nor proof that (the complainant) was truthful. It merely dispels any negative inference that might arise from (the complainant's) assumed silence. It eliminates any negative inference that (the complainant's) claims of having been sexually assaulted are false because of (the complainant's) assumed failure to have confided in anyone about the sexual offense."

[12] *Troupe* identified California as the only state that did not allow such evidence under *People* v. *Brown*, 8 Cal. 4th 746, 883 P.2d 949, 35 Cal. Rptr.

2d 407 (1994). *State* v. *Troupe*, supra, 237 Conn. 299 n.13. Although the California Supreme Court rejected the fresh complaint rule in *Brown*, it did not reject evidence of a victim's complaint to a third party prior to making an official report. See *People* v. *Brown*, supra, 749–50. The court explained as follows: "Upon reexamining its theoretical underpinnings, [the court] conclude[s] that the [fresh complaint] doctrine, as traditionally defined, no longer provides a sound basis for the admission of evidence of extrajudicial statements made by the victim of a sexual offense in reporting the alleged crime.

"At the same time, however, [the court] conclude[s] that—setting aside the outdated notions [on] which the doctrine traditionally has rested—the limited, nonhearsay evidence that in the past has been admitted under the [fresh complaint] doctrine nonetheless is, in most instances, properly admissible at trial under generally applicable evidentiary standards.

"Accordingly, [the court] conclude[s] that the formulation and parameters of the [fresh complaint] doctrine . . . should be revised to reflect a more accurate understanding of the proper basis for the admission of such evidence. . . . [U]nder principles generally applicable to the determination of evidentiary relevance and admissibility, proof of an extrajudicial complaint, made by the victim of a sexual offense, disclosing the alleged assault, may be admissible for a limited, nonhearsay purpose—namely, to establish the fact of, and the circumstances surrounding, the victim's disclosure of the assault to others—whenever the fact that the disclosure was made and the circumstances under which it was made are relevant to the trier of fact's determination as to whether the offense occurred. Under such generally applicable evidentiary rules, the timing of a complaint (e.g., whether it was made promptly after the incident or, rather, at a later date) and the circumstances under which it was made (e.g., whether it was volunteered spontaneously or, instead, was made only in response to the inquiry of another person) are not necessarily determinative of the admissibility of evidence of the complaint. Thus, the 'freshness' of a complaint, and the 'volunteered' nature of the complaint, should not be viewed as essential prerequisites to the admissibility of such evidence." (Emphasis omitted.) Id.

[13] *Troupe* identified the other four states as Hawaii, Massachusetts, Minnesota and Ohio. See *State* v. *Troupe*, supra, 237 Conn. 300 n.15.

[14] We note that, in *State* v. *Samuels*, 273 Conn. 541, 871 A.2d 1005 (2005), this court modified the constancy of accusation doctrine by precluding the admission of any out-of-court complaint made by the victim following an official complaint to the police. See id., 551–52 ("[o]nce a sexual assault victim has reported the crime to the police . . . corroborative testimony by constancy witnesses that is based on postcomplaint conversations with the victim, even if relevant, no longer serves the purpose of countering a negative inference as to the victim's credibility because it is the inconsistency between the victim's silence following the assault and her subsequent complaint to the police that gives rise to such an inference"). The court, however, did not reconsider the continuing validity of the underlying doctrine in that case, as we do today.

[15] The Vermont court's view that most other courts apply ordinary rules of evidence in sexual assault cases reflects a misunderstanding of the law, perhaps because the court did not consider that most jurisdictions that have rejected the fresh complaint doctrine, as this court did in *Troupe*, allow the admission of testimony regarding out-of-court complaints by victims of sexual assault as nonhearsay evidence under other theories.

[16] Massachusetts was not the first state to adopt the first complaint doctrine. See *State* v. *Krieger*, 803 A.2d 1026, 1031 (Me. 2002) (discussing application of first complaint rule in Maine, under which, unlike in Massachusetts, "[n]either the details of the complaint . . . nor the identity of the perpetrator . . . [is] admissible"); see also *State* v. *Calor*, 585 A.2d 1385, 1387 (Me. 1991) (noting that details of complaint are not admissible under doctrine).

[17] In *Commonwealth* v. *Aviles*, 461 Mass. 60, 71–73, 958 N.E.2d 37 (2011), the Supreme Judicial Court of Massachusetts reaffirmed the continuing vitality of the first complaint doctrine but changed the standard employed to review a trial court's determination regarding the admissibility of evidence pursuant to that doctrine. In observing that the first complaint evidence at issue was also admissible under other rules of evidence; see id., 75–76; the court explained that, because it had become apparent that trial courts needed greater flexibility in dealing with the multiplicity of factual scenarios that arise in the context of first complaint evidence, the rule sometimes broke down when courts were presented with factual circumstances that were

not anticipated when the rule was established. Id., 72–73. The court thus concluded that the doctrine should not be viewed as an evidentiary rule but as "a body of governing principles to guide a trial judge on the admissibility of first complaint evidence. . . . The judge who is evaluating the facts of a particular case is in the best position to determine the scope of admissible evidence, keeping in mind the underlying goals of the first complaint doctrine, [the court's] established first complaint jurisprudence, and [its] guidelines for admitting or excluding relevant evidence." (Citation omitted.) Id., 73. The court then determined that, instead of deeming the admission of evidence in violation of the rule always erroneous and subject to a determination on appeal of whether the error was prejudicial when a defendant objects to the admission of the evidence, or whether the error created a substantial risk of a miscarriage of justice when a defendant does not object, the trial court's admission of first complaint evidence should be reviewed under an abuse of discretion standard. Id., 72–73.

[18] "See, e.g., [I. Seidman & S. Vickers, 'The Second Wave: An Agenda for the Next Thirty Years of Rape Law Reform,' 38 Suffolk U. L. Rev. 467, 469 (2005) ('[j]urors still expect evidence of fresh complaints by victims with accompanying hysteria and torn clothes')]; [A.] Taslitz, Rape and the Culture of the Courtroom [(1999) pp. 19–25] (discussing culture of silence that results in expectation that 'real' [sexual assault] victims will speak 'promptly and loudly'); [K.] Stanchi, ['The Paradox of the Fresh Complaint Rule,' 37 B.C. L. Rev. 441, 458–64 (1996)] (explaining perseverance of so-called 'timing myth' that victims who do not promptly report [sexual assault] are lying about assault in face of empirical data establishing that victims often do not report sexual assaults for variety of reasons)." *Commonwealth* v. *King*, supra, 445 Mass. 238–39 n.19.

[19] "See, e.g., [I. Seidman & S. Vickers, 'The Second Wave: An Agenda for the Next Thirty Years of Rape Law Reform,' 38 Suffolk U. L. Rev. 467, 468–69 (2005)] (expressing view that 'vast majority of people—including law enforcement personnel, judges and potential jurors—remain conflicted about what constitutes "consensual" sex [and thus victims] continue to encounter the same hurdles that they did thirty years ago'); [M. Anderson, 'The Legacy of the Prompt Complaint Requirement, Corroboration Requirement, and Cautionary Instructions on Campus Sexual Assault,' 84 B.U. L. Rev. 945, 1007–10 (2004)] (discussing popular misconceptions about nature of sexual assault [on] college campuses, including that [sexual assault] is committed by strangers and that alcohol consumption is linked with sexual availability and tends to shift blame to victim); [M. Anderson, 'From Chastity Requirement to Sexuality License: Sexual Consent and a New Rape Shield Law,' 70 Geo. Wash. L. Rev. 51, 104–108, 129–30 (2002)] (summarizing research over past two decades suggesting that jurors are biased against complainants with prior history of sexual promiscuity, who frequent bars or parties with alcohol, and who have had prior sexual relationship with defendant); [D.] Koski, ['Jury Decisionmaking in Rape Trials: A Review & Empirical Assessment,' 38 Crim. L. Bull. 21, 119–36] (2002) (empirical research on juries' decision-making behavior in rape cases revealed jurors 'may rely on rape "scripts" which they bring with them into the jury room' and 'jury room [is] a complex context in which legal mandates [jury instructions] interact very explicitly with commonsense understandings of the world'); [A.] Taslitz, Rape and the Culture of the Courtroom [(1999) pp.] 38–40 (citing recent data on . . . [college] students revealing significant numbers agree 'women frequently cry rape falsely [and] that [sexual assault] is often provoked by the victim'; noting factors such as victim's appearance, alcohol consumption, sexual promiscuity, and careless behaviors contribute to perceived blameworthiness; [and] concluding juries harbor persistent rape mythologies); [L. Olsen-Fulero & S. Fulero, 'Commonsense Rape Judgments: An Empathy-Complexity Theory of Rape Juror Story Making,' 3 Psychol. Pub. Policy & L. 402, 418] (1997) (reviewing twenty-five years of research and empirical studies regarding juror decision-making in [sexual assault] cases, and concluding that '[their] work and [the] recent work of others have supported the notion that jurors come to the rape judgment situation with preconceptions and attitudes that lead them to entertain particular stories about what may have happened . . . and that these stories are then used to arrive at a legal decision or verdict'); [D. Bryden & S. Lengnick, 'Rape in the Criminal Justice System,' 87 J. Crim. L. & Criminology 1194, 1272 (1997)] (reviewing decades of research on [sexual assault] prosecutions and concluding most research supports 'finding that acquaintance cases, especially those with nontraditional victims, are more difficult for the prosecution than stranger cases'). [Contra Office for Victims of Crime, Office of

Justice Programs, United States Department of Justice, First Response to Victims of Crime (2001) p. 10] ('[f]alse accusations of sexual assault are estimated to occur at the low rate of 2 percent—similar to the rate of false accusations for other violent crimes')." *Commonwealth* v. *King*, supra, 445 Mass. 239–40 n.20.

[20] We cite these studies, which do not appear to have been tested by the adversarial method or addressed by experts in the Massachusetts court, not to suggest that they are correct but, rather, to suggest that we have found no studies indicating that juror bias has been eliminated.

[21] The authors of Tait's Handbook of Connecticut Evidence argue that this court should reject constancy testimony entirely, at least in child sexual abuse cases, because such evidence has been rejected in Connecticut for all other types of crimes, has a high potential for prejudice to the accused, was originally intended to benefit adult victims of sexual assault, and consumes an inordinate amount of judicial attention. C. Tait & E. Prescott, Tait's Handbook of Connecticut Evidence (5th Ed. 2014) § 6.37.6, pp. 434–35; see id., § 6.37.4 (a), p. 431. Referring to "dissipating societal views of [sexual assault]"; id., § 6.37.6, p. 434; and "fading societal attitudes as to [a sexual assault victim's] credibility"; id., p. 435; the authors contend that any lingering prejudices of jurors in sexual assault cases may be adequately addressed by a "vigorous and individualized voir dire" and in closing argument. Id., p. 434. The authors, however, fail to cite any research documenting the purported change in societal attitudes regarding the credibility of sexual assault victims who delay in reporting the offense.